**OF THE**
**STATE OF DELAWARE**

BONNIE W. DAVID
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: March 27, 2025
Date Decided: April 7, 2025

Matthew D. Perri, Esquire
Mari Boyle, Esquire
Steven J. Fineman, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

Carl D. Neff, Esquire
Maura L. Burke, Esquire
Pierson Ferdinand LLP
CSC Station
112 S. French Street
Wilmington, DE 19801

RE:  *Melissa Garlington v. Two Rivers Farm, LLC*,
C.A. No. 2024-0917-BWD

Dear Counsel:

This letter opinion follows entry of a default judgment ordering defendant Two Rivers Farm, LLC ("Defendant" or the "Company"), a Delaware limited liability company, to produce certain books and records to plaintiff Melissa Garlington ("Plaintiff"). Defendant failed to comply with the default judgment, Plaintiff moved to enforce it, and Defendant finally appeared through Delaware counsel. Defendant moved to set aside the default judgment on the grounds that when the complaint was served, Defendant had been cancelled by operation of law for failure to designate a registered agent. The Court held that the default judgment

was valid but would be reopened in equity, solely to address confidentiality issues implicating the interests of third parties. This letter opinion resolves those issues.

## I.    BACKGROUND

On September 3, 2024, Plaintiff initiated this action through the filing of a Verified Complaint for Inspection of Books and Records (the "Complaint"). Verified Compl. for Inspection of Books & Records [hereinafter Compl.], Dkt. 1. The Complaint seeks to enforce an August 14, 2024 demand (the "Demand") to inspect the books and records of Defendant, a Delaware limited liability company. *Id.* ¶ 3. The Demand states that Plaintiff seeks to value her interests in the Company, investigate potential mismanagement, and call a meeting of the Company's members, among other purposes. Compl., Ex. 2 at 4.

The Complaint alleged that "[t]he Company was technically cancelled by the Delaware Secretary of State on December 6, 2023 after the Company's manager failed to name a new registered agent following its registered agent's resignation on November 6, 2023." Compl. ¶ 5. Title 6, Section 18-104(d) directs that:

> The registered agent of a limited liability company . . . may resign without appointing a successor registered agent by paying a fee as set forth in § 18-1105(a)(2) of this title and filing a certificate of resignation with the Secretary of State, but such resignation shall not become effective until 30 days after the certificate is filed. After receipt of the notice of the resignation of its registered agent, the limited liability company for which such registered agent was acting shall obtain and

designate a new registered agent, to take the place of the registered agent so resigning. If such limited liability company fails to obtain and designate a new registered agent as aforesaid prior to the expiration of the period of 30 days after the filing by the registered agent of the certificate of resignation, the certificate of formation of such limited liability company shall be canceled. After the resignation of the registered agent shall have become effective as provided in this section and ***if no new registered agent shall have been obtained and designated in the time and manner aforesaid, service of legal process against each limited liability company . . . for which the resigned registered agent had been acting shall thereafter be upon the Secretary of State*** in accordance with § 18-105 of this title.

6 *Del. C.* § 18-104(d) (emphasis added). In accordance with Section 18-104(d), Plaintiff served the Complaint on the Delaware Secretary of State. *See* Summons & Return of Serv. on Def. Two Rivers Farm, LLC, Dkt. 6. Plaintiff also emailed a copy of the Complaint to Defendant's counsel at Brown Winick Law ("Brown Winick"). Pl.'s Mot. for Default J. Against Def. Two Rivers Farm, LLC ¶ 8, Dkt. 10. Brown Winick informed Plaintiff that it would be representing Defendant in this action, and eventually produced some, but not all, of the documents sought in the Demand. *Id.* ¶¶ 10, 13, 16.

Defendant did not engage Delaware counsel, nor did Brown Winick enter an appearance in this action. Defendant failed to answer the Complaint by the deadline agreed upon by the parties, and Plaintiff moved for default judgment (the "Motion for Default Judgment"). *Id.* The Court held a hearing on the Motion for Default

Judgment, at which a corporate representative of Defendant appeared. The Court advised that the Company must retain Delaware counsel to appear in the case and extended the deadline to respond to the Complaint. *See* Tr. Telephonic Hr'g & Rulings of Ct. on Pl.'s Mot. for Default J. 9, Dkt. 17. Defendant failed to respond to the Complaint by the extended deadline and default judgment was entered (the "Default Judgment"). Order Granting Pl.'s Mot. for Default J. Against Two Rivers Farm, LLC, Dkt. 16. The Default Judgment required Defendant to produce to Plaintiff all documents sought in the Demand and did not condition such production on entry of a confidentiality order. *Id.* Two weeks later, Plaintiff filed a Motion for Expedited Coercive Sanctions (the "Motion for Sanctions"), seeking, among other things, the appointment of a limited purpose receiver to coerce compliance with the Default Judgment. Pl.'s Mot. for Expedited Coercive Sanctions, Dkt. 18.

Delaware counsel then appeared on behalf of Defendant to oppose the Motion for Sanctions and separately moved to set aside the Default Judgment (the "Motion to Set Aside Default Judgment"). *See* Entry of Appearance, Dkt. 22; Def.'s Opp'n to Mot. for Expedited Coercive Sanctions & Cross-Mot. to Set Aside Default J. [hereinafter Mot. to Set Aside], Dkt. 23. As detailed in that motion, Defendant's primary argument for setting aside the Default Judgment was that at the time the

Complaint was served, Defendant was cancelled by operation of law, and service was therefore invalid. *See* Mot. to Set Aside ¶¶ 9–10.

At an initial hearing on the Motion for Sanctions, it appeared that Defendant had revived, or would soon revive, itself by designating a registered agent, and would moot the Demand by producing the books and records sought. *See* JAF, Dkt. 29. The Court therefore encouraged the parties to resolve outstanding issues without its further involvement. *Id.* But the parties could not agree and chose instead to file supplemental briefing on both the Motion for Sanctions and the Motion to Set Aside Default Judgment. *See* Def. Two Rivers Farm, LLC's Suppl. Br. in Support of Opp'n to Mot. for Expedited Coercive Sanctions & Cross-Mot. to Set Aside Default J. [hereinafter DOB], Dkt. 44; Pl.'s Suppl. Opening Br., Dkt. 45; Pl.'s Suppl. Answering Br., Dkt. 48; Def.'s Suppl. Answering Br., Dkt. 49.

By the time the Court heard supplemental argument on the Motion for Sanctions and the Motion to Set Aside Default Judgment, Defendant's entity status had been revived, and Defendant had mooted all but one request in the Demand. DOB at 1–2. Specifically, although Defendant agreed to produce a redacted list of the Company's members, it refused to produce an unredacted list showing members' contact information. *Id.* at 2. Defendant argued, among other things, that enforcing the Default Judgment in this regard would work a manifest injustice because the

member "list is subject to confidentiality and privacy expectations of others over whom Defendant has no control but for whom Defendant is bound to maintain privacy." Mot. to Set Aside at 1; *see also id.* ¶ 21 ("[Defendant] has an obligation to maintain the privacy and confidentiality of its investors.").

The Court largely denied the Motion to Set Aside Default Judgment, concluding that Plaintiff properly served Defendant "in accordance with the applicable statute, and that the [D]efault [J]udgment is valid." Tr. Telephonic Guidance of Ct. Regarding Jan. 24, 2025 Ruling [hereinafter Mar. 6 Ruling] 7, Dkt. 67. It reasoned:

> The primary argument raised in the Motion to Set Aside the Default Judgment is that the default judgment is void. According to the defendant, when its certificate of formation was cancelled for failure to identify a new registered agent under 6 *Del. C.* [§] 18-104(d), it ceased to exist and could not be sued. The defendant further argues that, even if the defendant could be sued, the only permissible method of service of process was through publication.
>
> That service argument, though, is directly contrary to the plain language of Section 18-104(d), which, again, expressly states that "if no new registered agent shall have been obtained and designated in the time and manner aforesaid, service of legal process against each limited liability company . . . shall thereafter be upon the Secretary of State in accordance with § 18-105 of this title." That is how service was made in this case, and it was therefore effective under the statute.
>
> In support of its contrary position, the defendant cites *In re Reinz Wisconsin Gasket, LLC*, 2023 WL 3300042, for the proposition that "[b]y statute, a limited liability company's existence 'as a separate legal

entity shall continue until cancellation of the limited liability company's certificate of formation.' When a certificate of cancellation is filed for an entity, its 'existence as [a] jural entit[y] cease[s].' Its 'legal existence ends.' A defunct entity ceases to be a 'body corporate.'"

That decision also explains that "[a]fter a certificate of cancellation has been filed, a defunct entity may speak only through a receiver to manage litigation or any other outstanding business: the receiver is appointed because there are no other fiduciaries to make decisions for the entity. A defunct entity cannot otherwise make any decisions or take any action."

Importantly, the *Reinz* case did not address a cancellation under Section 18-104(d). Here, there was no certificate of cancellation filed. Instead, cancellation occurred by operation of law due to the LLC's failure to timely identify a registered agent.

The defendant suggests that a precondition to suing the entity while defunct was to petition for the appointment of a receiver under 6 *Del. C.* [§] 18-805. But that statute permits application for a receiver "[w]hen the certificate of formation of any limited liability company formed under this chapter shall be cancelled by the filing of a certificate of cancellation pursuant to § 18-203 of this title . . . ." And, again, no such filing was ever made here.

Tr. Hr'g & Rulings of Ct. on Pl.'s Mot. for Expedited Coercive Sanctions & Def.'s Cross-Mot. to Set Aside Default J. 44–46, Jan. 24, 2025, Dkt. 56. However, the Court further directed that, because "the confidentiality of personal information of third parties is implicated," "in the interest of equity," the Court would "reopen[] the [D]efault [J]udgment solely for the purpose of determining whether the member list

must be produced in unredacted form and/or subject to a confidentiality order." Mar. 6 Ruling at 7.

Thereafter, the parties submitted supplemental briefing addressing confidentiality of the member list. Def.'s Br. in Support of Protection of Its Members & Member List, Dkt. 69 [hereinafter DB]; Pl.'s Answering Br. in Support of Production of Members List [hereinafter PB], Dkt. 71; Def.'s Reply Br. in Support of Protection of Its Members & Members List, Dkt. 75.

## II.  ANALYSIS

The Court reopened the Default Judgment to address Defendant's argument that concerns about confidentiality and the privacy of third parties support producing the member list in redacted form and/or subject to a confidentiality order. Defendant's supplemental briefing does not address privacy issues, however. Instead, Defendant now argues that (1) Plaintiff seeks the member list for an improper purpose, and (2) if Defendant is ordered to produce an unredacted copy of the member list, Plaintiff should be prohibited from using it. Even if those arguments were responsive to the narrow issue the parties were permitted to brief, they fail on the merits.

Defendant's primary argument is that Plaintiff is not entitled to the unredacted member list because she seeks it for an improper purpose. The Demand states that

Plaintiff seeks to value her interests in the Company, investigate potential mismanagement, and call a meeting of the Company's members. Compl., Ex. 2 at 4. Plaintiff has stated she also wishes to "discuss with other Members their experiences in receiving information" from management. Compl., Ex. 2 at Ex. B. But according to Defendant, Plaintiff's true purpose for seeking the member list is "to foment discord amongst the Members with the aim of harassing and ultimately replacing the Company's management" with Plaintiff's former employer, Galtere, Inc. DB at 11.

The Court did not invite the parties to relitigate the propriety of Plaintiff's purpose; it expected the parties to address potential harm to third parties in revealing confidential information without the protection of a confidentiality order. But even if Plaintiff's purposes were at issue, the Demand plainly states a proper purpose for the member list. Title 6, Section 18-305(a)(3) entitles a member of a Delaware limited liability company to obtain "[a] current list of the name and last known business, residence or mailing address of each member and manager." 6 *Del. C.* § 18-305(a)(3). Similarly, Section 7.2 of the Company's operating agreement entitles members to "the information and documents kept by the Company pursuant to Section 7.1[,]" which includes "[a] current list of the full name and last known business or residence address of each Member and Assignee set forth in alphabetical

order, together with the Capital Contributions, Capital Account and Units of each Member and Assignee." Compl., Ex. 1 §§ 7.1–7.2. And Plaintiff has identified a facially proper purpose for seeking a member list. *See, e.g.*, *Marilyn Abrams Living Tr. v. Pope Invs. LLC*, 2017 WL 1064647, at *4 (Del. Ch. Mar. 21, 2017) ("Contacting other members to discuss an investment is a proper purpose."), *aff'd*, 177 A.3d 69 (Del. 2017).[1]

Defendant argues that Plaintiff's "real reason for contacting the Members is to convince as many Members as possible of [her] theory that the Company has been mismanaged" so that she can "build a coalition of enough Members to overthrow management." DB at 14. Even if Defendant is correct that Plaintiff seeks to communicate with stockholders to change management, that purpose is proper. *See Marathon P'rs L.P. v. M&F Worldwide Corp.*, 2004 WL 1728604, at *8 (Del. Ch. July 30, 2004) (holding that inspection of a stock list to communicate with other

---

[1] *See also, e.g.*, *Arbor Place, L.P. v. Encore Opportunity Fund, L.L.C.*, 2002 WL 205681, at *3–4 (Del. Ch. Jan. 29, 2002) (granting a member's request to inspect the member list to "contact the other members and discuss with them the business and affairs" of the company). *Cf. Stock v. Sustainable Energy Techs., Inc.*, 2023 WL 7131028, at *10 (Del. Ch. Oct. 30, 2023) ("[C]ommunication with other stockholders about specific matters of corporate concern, has consistently been held to be a proper purpose for a stockholder to obtain a stock list."); *LeRoy v. Hardwicke Cos.*, 1983 WL 21022, at *2 (Del. Ch. Feb. 16, 1983) (holding that a stockholder's purpose "to discuss corporate finances and management's inadequacies and then, depending on the responses, determine stockholder sentiment for either a change in management or a sale pursuant to a tender offer," was proper).

stockholders to effect a change in management was a proper purpose); *Skoglund v. Ormand Indus., Inc.*, 372 A.2d 204, 214 (Del. Ch. 1976) (holding that inspection of a stock list "to communicate with other shareholders on matters relating to their common interest, including, among other things, the desirability of changing the board of directors[,]" was proper).[2]

Second, Defendant urges that if the Court orders production of an unredacted member list, Plaintiff should be prohibited from using it. DB at 21. As support, Defendant cites Section 18-305(c), which states:

> The manager of a limited liability company shall have the right to keep confidential from the members, for such period of time as the manager deems reasonable, any information which the manager reasonably believes to be in the nature of trade secrets or other information the disclosure of which the manager in good faith believes is not in the best interest of the limited liability company or could damage the limited liability company or its business or which the limited liability company is required by law or by agreement with a third party to keep confidential.

---

[2] Defendant also argues that "Plaintiff is nothing more than Galtere's proxy[]" and "[h]er demands are Galtere's demands[,]" but has not met its burden to prove that is the case. DB at 18. Defendant says "[t]his is where discovery would have been illuminating" and "renews its bid to continue with the discovery that was already served and the depositions previously requested so that the question of a proper or improper purpose does not have to be guided solely by the limited documents already exchanged as demands and responses." *Id.* n.2. The Court once again rejects that bid; the Default Judgment entered against Defendant is valid and the Court has set it aside in equity solely to address privacy issues affecting third parties.

6 *Del. C.* § 18-305(c); DB at 21. Defendant argues that the statute "grant[s] the Company the right, exercised through its management, to condition the provision of the Member List on confidentiality procedures and guidelines established by the Company[,]" including the conditions that "the unredacted Member List cannot be used by Plaintiff to contact other Members[,]" "Plaintiff may not share any information on the Member List publicly, and . . . Plaintiff is also prohibited from sharing the Member List or any information therein with Galtere."[3] DB at 22–23. This Court has rejected similar arguments, explaining that the Company "bears the burden to prove [the manager]'s good faith belief that disclosing any information sought in the Demand would not be in the best interest of the Company[,]"[4] and a "member list[] bear[s] no resemblance to trade secrets, nor are member lists typically the kind of information 'the disclosure of which . . . could damage the Company's business' (as opposed to the *Manager's* business)." *Marilyn Abrams Living Tr.*,

---

[3] Defendant also points out that the Company's operating agreement makes a request for books and records "expressly subject to compliance by such Member with the safety, security and confidentiality procedures and guidelines of the Company, as such procedures and guidelines may be established from time to time." Compl., Ex. 1 § 7.2.

[4] *Gill v. Regency Hldgs., LLC*, 2023 WL 4607070, at *18 (Del. Ch. June 26, 2023) (citing *Bond Purchase, L.L.C. v. Patriot Tax Credit Props., L.P.*, 746 A.2d 842, 846 (Del. Ch. 1999)), *R. & R. adopted*, 2023 WL 4761810 (Del. Ch. July 25, 2023).

2017 WL 1064647, at *6.  Defendant's request for an order prohibiting Plaintiff's use of the member list is, therefore, unwarranted.

Plaintiff has, however, agreed to treat the member list confidentially, which is appropriate given the personal information of third parties reflected on the list.  The Court will enter Plaintiff's proposed form of confidentiality order, which appropriately protects third parties' confidential information by prohibiting Plaintiff from disclosing member information without the member's permission, unless that information is publicly available, previously known, or independently acquired by Plaintiff.  *See* PB, Ex. A § 2.

**III.   CONCLUSION**

Defendant must produce to Plaintiff an unredacted copy of the member list, subject to Plaintiff's proposed form of confidentiality order.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Vice Chancellor

cc:     All counsel of record (by File & ServeXpress)